NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NKECHINYERE EKE, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 12-05699 (DMC)(MF) |
| MAXIM HEALTHCARE SERVICE, INC. | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Motion of Defendant Maxim Healthcare Service, Inc. ("Maxim") to Dismiss the Complaint of Plaintiff Nkechinyere Eke ("Plaintiff") pursuant to FED.R.CIV.P. 12(b)(6). After carefully considering the parties' submissions, and based upon the following, it is the finding of this Court that Maxim's Motion to Dismiss the Complaint is granted with prejudice.

**I. BACKGROUND**[1]

Plaintiff worked for Maxim as a home care nurse beginning on or around June 20, 2009. From October 2010 to February 2012, Plaintiff was assigned to provide daily health care for a four-year old child suffering from Hypoxic-Ischemic Encephalitis, an impairment that required the patient to be placed on a ventilator and receive constant intensive care. At some point in 2011

---

[1] The facts set forth in the Background are taken from the Complaint (Sept. 12, 2012, ECF No. 1, Exh. A). On this Motion to Dismiss, the Court will accept the factual allegations in the Complaint as true and construe all facts in Plaintiff's favor.

or 2012, Plaintiff notified Maxim's Supervisor of Nursing, Audrey Skeeter, of her concerns that the patient's mother was not administering the proper medications to the patient, thereby preventing the patient from completing his physical therapy.

Shortly thereafter, Ms. Skeeter informed Plaintiff that she had made attempts to contact the patient's mother, but that the mother was not responding to any of her phone calls. Eventually, Ms. Skeeter told Plaintiff that she intended to drive to the patient's home in order to speak to the patient's mother about her son. However, Plaintiff continued to observe that the patient was suffering from symptoms related to the patient not being given his required medications.

On January 28, 2012, Plaintiff placed a phone call to the Division of Youth and Family Services (DYFS), due to her concern that the patient's mother was not properly caring for him. DYFS informed Plaintiff that they would investigate the reported situation with the patient. A few days later, Ms. Skeeter informed Plaintiff that the patient was too sick for school, and therefore there was no need for Plaintiff to come to work until further notice. On February 18, 2012, Plaintiff received a letter from Maxim's Human Resources, dated February 18, 2012, instructing her to contact Maxim's South Orange office to set up a meeting with the Director of Nursing before 5:00 pm on February 22, 2012 to discuss a "recent client related report," or her employment would be terminated for "non-cooperation with an investigation."

On February 20, 2012, Ms. Skeeter told Plaintiff that it was "no longer safe" for her to work at the patient's home any longer. The same day, Plaintiff went to Maxim to meet with the Director of Nursing in order to discuss the issues with her patient. When Plaintiff met with the Director of Nursing, she found out that her name had been removed from Maxim's computer

database for employees. During the meeting, the Director of Nursing told Plaintiff that her "actions were right, but that [she] went a little too far" [by calling DYFS], and that Maxim was therefore terminating her employment.

Plaintiff's Complaint came to this Court by way of removal by Maxim on September 12, 2012. Plaintiff's two count Complaint asserts the following: (1) that Plaintiff's employment with Maxim was terminated in retaliation, in violation of the Conscientious Employee Protection Act ("CEPA"); and (2) that Plaintiff was wrongfully discharged in violation of pubic policy.

Maxim filed the instant Motion to Dismiss and an accompanying Moving Brief ("Def. Br.") on October 3, 2012. (ECF No. 7). Plaintiff filed her Opposition Brief ("Pl. Opp. Br.") on October 26, 2012. (ECF No. 9). Maxim filed its Reply Brief ("Def. Rep.") on November 12, 2012. (ECF No. 11). The matter is now before this Court.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Fed. R. Civ. P. 12(b)(6) standard. See 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim

3

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965.

**III. DISCUSSION**

A. Plaintiff's CEPA Claim

Plaintiff first alleges that she was terminated by Maxim in retaliation for her complaints to her supervisor and to DYFS, in violation of CEPA. (Compl. ¶ 26). To make out a prima facie claim under CEPA, Plaintiff must show that: (1) she reasonably believed that Maxim engaged in misconduct that violated a law, rule, regulation or a clear mandate of public policy, or constituted improper patient care; (2) she performed a whistle-blowing activity regarding that conduct as set forth in N.J.S.A. § 34:19-3; (3) Maxim took an adverse employment action against her; and (4) a causal connection exists between the protected activity and the adverse employment action. Yurick v. State, 875 A.2d 898 (N.J. 2005); N.J.S.A. § 34:19-3.

Plaintiff incorrectly contends that her decision to report the conduct of a third party, her patient's mother to DYFS, is sufficient to sustain a CEPA claim against Maxim. The purpose of CEPA is to prevent retaliatory action by an employer against an employee who "blow[s] the whistle on organizations engaged in illegal or harmful activity." Young v. Schering Corp., 141 N.J. 16, 23 (1995). Protected employee whistle-blowing under CEPA is limited to whistle-blowing regarding activities, policies, or practices of "employers." N.J.S.A. § 34:19-1 (defining CEPA as "[a]n Act to protect employees from retaliatory action by employers ...."). CEPA defines an "employer" as "an individual, partnership association, corporation or group of persons

acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent ...." N.J.S.A. § 34:19-2(a).

There is ample case law demonstrating that CEPA's protection does not extend to reports alleging the misconduct of non-employers. See, e.g., Blackburn v. United Parcel Service, Inc., 3 F. Supp. 2d 504, 512, *affirmed* 179 F.3d 81 (D.N.J. 1998) (CEPA was enacted to protect from retaliatory action employees who "blow the whistle" on employers engaged in illegal or harmful activity); see also, Fleming v. Correctional Healthcare Solutions, Inc., 751 A.2d 1035 (N.J. 2000) (purpose of CEPA is to protect employees who report illegal and unethical workplace activities and to discourage employers from engaging in such conduct).

Here, Plaintiff made no complaint to DYFS about Maxim's conduct. Instead, Plaintiff alleges that she called DYFS "due to her concern that the patient's mother was not properly caring for him." (Compl. ¶ 12). As to Maxim's conduct, Plaintiff acknowledges that after she reported her concerns regarding patient's mother to the Director of Nursing, the Director of Nursing then called the patient's mother and also expressed an intent to visit the patient's home. (Compl. ¶¶ 9, 10). Plaintiff's argument is that the Court should apply a liberal construction of CEPA's definition of employer, thereby characterizing the patient's mother as "another employer" who "has a business relationship" with Maxim. (Pl Opp. Br. 5-7).

The Court disagrees with Plaintiff's liberal application of the term employer under CEPA to the patient's mother. As Maxim properly contends, such an expansion of CEPA's protection to non-employers contradicts both the plain language of CEPA and also the wealth of established case law on this issue. (Def. Rep. 4). This instant case is analogous to Aviles v Big M. Inc., No.A-4980-09T4, 2011 WL 780889 (N.J. Super. Ct. App. Div. Jan 24, 2011) A-4980-09T4,

2011 N.J. Super. In <u>Aviles</u>, the Appellate Division affirmed the decision of the trial court rejecting the plaintiff's CEPA claim, finding that CEPA's protections do not extend to reporting of the wrongdoing of third parties. <u>Aviles</u>, 2011 WL 780889, at *12. In Aviles, the plaintiff, a manager at a retail store, made a report to her district manager about a customer who she believed had engaged in shoplifting. A few days later, the customer called the store to complaint that the plaintiff "rummaged through her handbag" for suspected shoplifting. The company terminated the plaintiff's employment. The conduct of the patient's mother alleged in Plaintiff's Complaint was not carried out on behalf of or in the interest of Maxim or some other party that Maxim had a business relationship with. The patient's mother was merely a client of Maxim, much like the shoplifter in <u>Aviles</u>.

<u>Maslow v. LaTorre</u>, No. L-5620-05, 2008 WL 4901308 (N.J. Super. Ct. App. Div. Nov. 17, 2008) further demonstrates why the facts plead in the Complaint in the instant matter are insufficient to support a valid CEPA claim. In <u>Maslow</u>, the Appellate Division affirmed the decision of the trial court dismissing the plaintiff's CEPA claim on the grounds that the complaint did not allege that the whistle-blowing related to an "activity, policy or practice of the employer ... that [Plaintiff] reasonably believe[d] was in violation of a law or regulation promulgated pursuant to law." <u>Id.</u> at *2. The Appellate Division explained that "CEPA ... provides specific definitions for the kind of 'protected conduct' that can serve as the factual foundation fora claim: the employee must be complaining about conduct [] of the employer [] that the employee reasonably believes constituted a violation of law or a regulation promulgated pursuant to law, or a clear mandate of public policy." Id. at *1.

Thus, Count One of Plaintiff's Complaint fails because Plaintiff does not allege that she

6

engaged in whistle-blowing activity under CEPA.

### B. Plaintiff's Wrongful Discharge Claim

In Count Two of the Complaint, Plaintiff alleges that she was wrongfully discharged in violation of public policy. As shown below, Plaintiff's wrongful discharge claim fails to allege that she made any complaints or objections regarding Maxim's conduct that violated public policy, nor does Plaintiff allege that she was discharged for in retaliation for reporting any conduct of Maxim's that violated public policy.

In New Jersey, to sustain a valid cause of action for wrongful discharge in violation of public policy, Plaintiff must: (1) identify a clear mandate of public policy which her alleged discharge violated; (2) allege that she made internal or external complaints or objections regarding, or refused to participate in, conduct by Maxim that violated the public policy; and (3) establish that she was discharged in retaliation for opposing conduct by Maxim that violated the public policy at issue. See Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505 (N.J. 1980).

Plaintiff's wrongful discharge claim fails because Plaintiff's reports to Maxim and to DYFS of alleged improper care pertain to the conduct of her patient's mother, and not conduct of Maxim. Here, Plaintiff's Complaint alleges that she was terminated from her position at Maxim, but Plaintiff does not plead facts that her termination was in retaliation for complaining about conduct of her employer, Maxim, which is required to make out a valid wrongful discharge claim under CEPA. Instead, Plaintiff acknowledges Maxim's efforts to take action after she spoke with the Director of Health Services about her patient's mother.

The Third Circuit addressed this issue directly in a recent opinion, where the Court stated that to make out a wrongful discharge claim, Plaintiff must allege that she expressed

disagreement with a policy, directive or decision by an employer based on a clear mandate of public policy. Badrinauth v. MetLife Corp., 368 F. Appx. 320, 324 (3d Cir. 2010). The Court held that a plaintiff must "show that he was in fact discharged in retaliation for taking action in retaliation for taking action in opposition to corporate action which violated a clear mandate of public policy." The Third Circuit's opinion is Badrinauth is consistent with state case law regarding wrongful discharge claims. See, e.g., Young, 660 A.2d at 1159 (in order to maintain a wrongful discharge claim, "there must be actual notification to a governmental body of illegal employer conduct."); House v. Carter-Wallace, Inc., 556 A.2d 353 (N.J. App.Div.1989) (finding that for a wrongful discharge claim, the plaintiff must "show that he was in fact discharged in retaliation for taking action in opposition to corporate action which violates a clear mandate of public policy.").

In Plaintiff's Opposition Brief, she advances the argument that courts in New Jersey have recognized that terminations that violate a clear mandate of public policy are prohibited by common law. (Pl. Opp. Br. 10). However, the cases Plaintiff cites to in support of this argument involve plaintiffs who made a complaint about the conduct of their employers that violated public policy, not plaintiffs who were terminated for complaints lodged about the conduct of a non-employer third party. See Potter v. Village Bank of New Jersey, 225 N.J. Super. 547, 552-53 (App. Div. 1998) (plaintiff called the New Jersey Commissioner of Banking and reported what he believed to be illegal money laundering by the employer's directors); Zamboni v. Stamler, 847 F.2d 73, 75 (3d Cir. 1988) (plaintiff, a detective with the prosecutor's office, made complaints to the Civil Service Commission and the Division of Appellate Practices and Labor Relations opposing his employer's reorganization plan and the manner in which promotions would be

made); Kalman v. Grand Union Co., 183 N.J. Super. 153, 155-56 (App. Div. 1982) (plaintiff, a pharmacist, objected to her employer's request to close the pharmacy section of the store during normal operating time, citing to state regulations and professional code of ethics); Lally v. Copygraphics, 173 N.J. Super. 162, 166-67 (App. Div. 1980) (plaintiff objected to employer's directive not to file for workers compensation benefits by filing for such benefits until discharged); LePore v. National Tool & Mfg. Co., 224 N.J. Super. 463, 466 (App.Div. 1988) (plaintiff was discharged after reporting employer's unsafe working condition to OSHA); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988) (plaintiff objected to employer's decision to pass her over for a promotion in favor of less qualified male candidates and was later discharged because she sought to examine her personnel records to establish gender discrimination claim); Ballinger v. Del. River Port Auth., 172 N.J 586, 590 (2002) (plaintiff, a police officer, reported what he suspected was illegal activity by the police captain, who served as the employer's supervisor).

Again, the only objection that Plaintiff raised to Maxim and DYFS related solely to the patient's mother, not to any conduct or violation by Maxim. Thus, Plaintiff cannot make out a prima facie case for wrongful discharge, and Count Two of Plaintiff's Complaint is also dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint is **granted** with prejudice. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: May 7, 2013
Original: Clerk
cc: All Counsel of Record
    Honorable Mark Falk, U.S.M.J.

9